UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | CASE NO. 13-42959 | |
| COLOR STAR GROWERS OF COLORADO, § | | |
| INC., VAST, INC., and COLOR STAR, LLC, § | Chapter 11 | |
| § | | |
| Debtors. § | (Jointly Administered) | |
| § | | |

_____

| | | |
|---|---|---|
| TEXAS COMPTROLLER OF PUBLIC § | | |
| ACCOUNTS, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | ADVERSARY NO. _____ | |
| § | | |
| GARDERE WYNN SEWELL LLP; § | | |
| BRAD WALKER, LLC; § | | |
| SCOULER & COMPANY, LLC; § | | |
| SIMON RAY & WINIKKA, LLP; § | | |
| MUNSCH HARDT KOPF & HARR, PC; and § | | |
| GAVIN/SOLMONESE, LLC § | | |
| § | | |
| Defendants. § | | |

## TEXAS COMPTROLLER OF PUBLIC ACCOUNTS' COMPLAINT TO COMPEL DISGORGEMENT OF CHAPTER 11 PROFESSIONALS' FEES

COMES NOW the Texas Comptroller of Public Accounts ("Plaintiff" or "Texas Comptroller"), through the Texas Attorney General's office ("OAG"), and complains of Gardere Wynn Sewell LLP ("Gardere"); Brad Walker, LLC ("Walker"); Scouler & Company, LLC ("Scouler"); Simon Ray & Winikka, LLP ("Simon"); Munsch Hardt Kopf & Harr, PC

Page **1** of **13**

("Munsch"); and Gavin/Solmonese, LLC ("Gavin")(each individually "Defendant", collectively "Defendants") and asks the Court to disgorge fees paid to Defendants on the following grounds:

## I. Overview

1. Each Defendant has been paid for professional services rendered prior to the occurrence of the effective date of the plan that was confirmed in this Chapter 11 proceeding. Because the estate is administratively insolvent, Plaintiff asks the Court to order disgorgement of professional fees previously paid to Defendants to the extent necessary to allow for a proper pro-rata distribution amongst all administrative claimants, including Plaintiff.

## II. Jurisdiction and Venue

2. The Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. §§ 157(a) and (b)(2)(A), (E) and (O). FED.R.BANKR.P. 7001(1).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## III. Parties

4. Plaintiff, the Texas Comptroller, may be served with pleadings in this adversary proceeding through its undersigned counsel at the following address:

> Kimberly A. Walsh
> Assistant Attorney General
> Bankruptcy & Collections Division
> Texas Attorney General's Office
> P.O. Box 12548
> Austin, TX 78711-2548
> Telephone: (512) 475-4863

5. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3), Defendants may be served with process at the following addresses:

Gardere Wynn Sewell LLP
c/o Operator Partner
1601 Elm Street, Suite 3000
Dallas, TX 75201
Telephone: (214) 999-4526

Brad Walker, LLC
c/o Corporation Service Company
d/b/a CSC-Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701

Scouler & Company, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801
(302) 658-7581

Simon, Ray & Winikka, LLP
500 N. Akard, Suite 2860
Dallas, TX 75201
Telephone: (214) 871-2292

Steven A. Harr
Munsch Hardt Kopf & Harr, P.C.
500 North Akard Street, Suite 3800
Dallas, TX 75201-6659
Telephone: (214) 855-7500

Edward T. Gavin
Gavin/Solmonese, LLC
919 N. Market Street, Suite 1410
Wilmington, DE 19801-3046
Telephone: (302) 655-8997

## IV. History and Factual Allegations

6. Debtors each filed petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on December 15, 2013 ("Petition Date").

7. Debtors were required pursuant to 28 U.S.C. §§ 959 and 960 to pay post-petition taxes when due under applicable non-bankruptcy law. Debtors were required by §§ 171.152 and 171.202 of the Texas Tax Code to report and pay Texas franchise taxes to the Texas Comptroller on a timely basis. Under the Texas Tax Code, Debtors' franchise tax returns for the 2014 post-petition tax period were due May 15, 2014. Debtors had been filing the requisite franchise tax returns with the Texas Comptroller for approximately 15 years. While operating as Debtors In Possession and represented by numerous professionals (Gardere, Walker, and Scouler), Debtors failed to comply with the state and federal mandates to file and pay the requisite post-petition franchise tax returns when due.

8. Prior to confirmation, Defendants were retained in the following capacities:

   a. Gardere as counsel to Debtors and Debtors-in-Possession [Docket No. 106];
   b. Walker as Chief Restructuring Officer to Debtors [Docket No. 258];
   c. Scouler to provide management and restructuring services to Debtors [Docket No. 107];
   d. Simon as Special Conflicts Counsel to Debtors [Docket No. 337];
   e. Munsch as Attorneys for the Official Committee of Unsecured Creditors [Docket No. 178]; and
   f. Gavin as Financial Advisors to the Official Committee of Unsecured Creditors [Docket No. 179].

9. On June 9, 2014, Debtors filed a Motion for Approval of Compromise and Settlement ("Settlement")[Docket No. 378] with Regions Bank, Comerica Bank, and MCG Capital Corporation (together "Lenders") and the Official Committee of Unsecured Creditors ("Committee"). The Settlement was approved on July 22, 2014 [Docket No. 422].

10. Debtors' First Amended Joint Plan of Liquidation ("Plan" or "Confirmed Plan")[Docket No. 431] was filed August 5, 2014. Section 5.1.2 of the Plan provided that holders of Allowed Administrative Claims would be paid in full on the Effective Date or the date

the claims became allowed. Section 5.4 of the Plan provided that claims of Governmental Units of the type described in § 503(b)(1) of the Bankruptcy Code would be treated as Allowed Administrative Claims when due under non-bankruptcy law.

11. The Court entered Findings of Fact, Conclusions of Law, and Order Confirming Debtors' First Amended Joint Plan of Liquidation ("Confirmation Order")[Docket No. 530] on October 8, 2014.

12. Prior to the Effective Date, the Court entered orders approving Defendants' fee applications in the following amounts:

| **Applicant** | **Approved Amount** | **Docket** | **Order Date** |
| --- | --- | --- | --- |
| Gardere | $721,724.00 | 526 | 10/03/2014 |
| Walker | $99,085.59 | 534 | 10/17/2014 |
| Scouler | $432,441.50 | 533 | 10/17/2014 |
| Simon | $20,692.50 | 520 | 09/26/2014 |
| Munsch | $754,156.50 | 519 | 09/26/2014 |
| Gavin | $147,051.25 | 518 | 09/26/2014 |

Aside from that portion of Munsch's fees which Munsch voluntarily agreed to defer via the Settlement, Plaintiff understands that Debtors paid the above fees ("Professional Fees") in full.

13. The Confirmed Plan became effective on October 27, 2014 ("Effective Date").

14. Daniel J. Sherman was appointed to serve as the Liquidation Trustee ("Trustee") pursuant to the Plan and the Confirmation Order.

15. On November 6, 2014, Plaintiff filed an administrative expense claim in the amount of $97,268.27 against Debtor Color Star Growers of Colorado, Inc.; an administrative expense claim in the amount of $46,210.64 against Debtor Vast, Inc.; and an administrative expense claim in the amount of $5,331.88 against Debtor Color Star, LLC for a total of $148,810.79. The administrative expense claims were based on estimated franchise taxes for the 2014 post-petition tax period.

16. On November 7, 2014, Plaintiff filed an Application for Allowance of Administrative Expense [Docket No. 545] based on the estimated claims. The Application was originally set for hearing on December 16, 2014.

17. On January 7, 2015, the undersigned filed a Notice of Change of Appearance in Lead Counsel for the Texas Comptroller [Docket No. 557].

18. On February 20, 2015, the undersigned contacted Munsch, as counsel to the Trustee, with regard to the delinquent franchise tax returns for the 2014 post-petition tax period.

19. On June 30, 2015, in his Response to Texas Comptroller of Public Accounts' Application for Administrative Expense Tax Claim [Docket No. 570], Trustee advised the Court of his intention to prepare all tax returns and "*pay any taxes owed* pursuant to the First Amended Joint Chapter 11 Plan of Liquidation." (Emphasis added.)

20. On November 25, 2014 [Docket No. 550], March 3, 2015 [Docket No. 559], and July 1, 2015 [Docket No. 571], Trustee and Plaintiff filed Agreed Motions to continue the hearing on Plaintiff's Application for the purpose of allowing Trustee time to file the delinquent franchise tax returns for the 2014 post-petition tax period.

21. On September 28, 2015, Trustee filed the franchise tax returns for the 2014 post-petition tax period. Based on the returns as filed by the Trustee, Plaintiff subsequently withdrew its claim against Debtor Color Star, LLC; amended its administrative expense claim in the amount of $95,160.37 against Debtor Color Star Growers of Colorado, Inc.; and amended its administrative expense claim in the amount of $23,848.29 against Debtor Vast, Inc., for a total of $119,008.66 (collectively "Plaintiff's Claims" or "Texas Comptroller's Claims").

22. During an October 2, 2015, telephone conversation with Munsch, as counsel for the Trustee, the undersigned was first advised that funds were not available to pay the franchise taxes for the 2014 post-petition tax period.

23. On October 6, 2015, less than 30 minutes before the hearing on Plaintiff's Application, Trustee filed a Supplemental Response to the Application [Docket No. 578] and for the first time asserted that Plaintiff's claims were for pre-petition liability and/or were barred by the Governmental and/or Administrative Claims Bar Dates. Trustee and Plaintiff then announced an agreement to continue the hearing.

24. On October 28, 2015, Trustee objected to Plaintiff's claims [Docket No. 586] again arguing that Plaintiff's claims were for pre-petition liability and/or were barred by the Governmental and/or Administrative Claims Bar Dates.

25. On October 30, 2015, Plaintiff filed a Supplement to the Application for Administrative Expense Tax Claims [Docket No. 592].

26. Plaintiff's Application was finally heard on November 2, 2015.

27. On November 6, 2015, the Court rejected Trustee's arguments that the claims represented pre-petition liability and/or were time barred and entered an Order Granting the

Texas Comptroller of Public Accounts' Application for Administrative Tax Claim ("Order")[Docket No. 598]. Based on that Order, the Texas Comptroller holds Allowed Administrative Claims (as those terms are defined in the Confirmed Plan) in the aggregate amount of $119,008.66 which became allowed as of May 15, 2014.

28. On November 6, 2015, the Court entered an Agreed Order dismissing Trustee's claim objection [Docket No. 599].

29. On December 22, 2015, the undersigned sent a demand for payment of Plaintiff's Allowed Administrative Claims to Munsch, as counsel to the Trustee. On December 30, 2015, Munsch responded, denying the request for payment on the grounds that the Liquidation Trust lacked sufficient assets to pay Plaintiff.

30. To date, the Texas Comptroller has received no payment on its Allowed Administrative Claims.

31. A review of the claims register reveals that, in addition to the Professional Fees outlined above, numerous other administrative expense claims were filed. It is unclear which of these administrative expenses have been paid and by whom.

### V.     Cause of Action

32. Plaintiff sues for an order compelling disgorgement of the Professional Fees paid to Defendants. Plaintiff seeks to recover, on behalf of the bankruptcy estate, that portion of the Professional Fees paid to Defendants that would enable proper pro-rata distribution to all holders of Allowed Administrative Claims, including Plaintiff.

33. Section 507(a)(2) of the Bankruptcy Code provides for payment of administrative expenses. When a bankruptcy estate is administratively insolvent, § 503(b) administrative

expenses - including professional fees and expenses - should be paid only on a pro rata basis. Congress made no prioritization among administrative expenses, instead opting to have all such expenses treated to the same priority under § 507(a)(2) of the Bankruptcy Code.    By payment of Defendants' Professional Fees, Defendants received preference over other administrative claims in violation of federal law.

34.     "[W]here the assets of the estate are insufficient to fully pay claimants holding administrative expenses allowed pursuant to section 503(b) and specified in section 507, the claims must be *paid pro rata* and the funds should be distributed to each claimant equally." In re Chewning & Frey Security, Inc., 328 B.R. 899, 916 (Bankr. N.D. Ga. 2005). *See also* Specker Motor Sales Co. v. Eisen, 393 F.3d 659 (6th Circ. 2004)(similarly situated creditors whose claims accrue under the same chapter shall be paid pro-rata.); In re IML Freight, Inc., 52 B.R. 124 (Bankr. D. Utah 1985); In re Florida W. Gateway, 180 B.R. 299, 302 (Bankr. S.D. Fla. 1995); In re Barron, 73 B.R. 812 (Bankr. S.D. Ca. 1987).    Administrative claims must be treated "with absolute equality, unless, of course, some creditors in the class have agreed to subordinate their claims…with full knowledge of the facts."  Thomas Corp. v. Nichols, 221 F.2d 286, 289-90 (5th Cir. 1955).

35.     Disparate treatment of claims entitled to the same priority is not permitted under the Bankruptcy Code or applicable case law.  *See* In re Graphic Arts, Inc., 146 B.R. 38 (Bankr. D. Wyo. 1992)("among administrative claimants of same priority in an administratively insolvent case, those claimants will be paid their approved fees and expenses pro rata" *quoting* In re Specialty Plywood, Inc., 137 B.R. 960, 962 (Bankr. C.D. Cal. 1992)); In re J.R. Research, Inc., 65 B.R. 747, 751 (Bankr. D. Utah 1986)(former Chapter 11 trustee denied priority in

payment over other Chapter 11 administrative expenses in converted case: "Professional persons who performed services during Chapter 11 administrative case are on a parity with other Chapter 11 claimants and must share pro rata among the remaining funds." *quoting* IML Freight at 140); In re Lumara Foods of America, Inc., 50 B.R. 809, 817 (Bankr. N.D. Ohio 1985)(post-petition state tax claims were administrative expenses, but could not be paid prior to other administrative creditors).  The Court in Lumara found that state tax administrative expenses should not be paid ahead of professional fees which may not be paid in full, since both were of the same priority. Likewise, in this case, Defendants' Professional Fees should not be paid ahead of state tax administrative expenses, such as Plaintiff's, which may not be paid in full.

36. The Court may disgorge fees as necessary to provide for a pro rata distribution amongst administrative claimants in administratively insolvent cases.  See Specker Motor Sales Co. v. Eisen, 393 F.3d 659 (6th Cir. 2004); In re Chewning at 919; In re Lochmiller Industries, Inc., 178 B.R. 241, 251-254 (Bankr. S.D. Cal. 1995); In re Kingston Turf Farms, Inc., 176 B.R. 308, 310 (Bankr. D. R.I. 1995) ("Disgorgement is required as a matter of law, just to adhere to the mandatory payment scheme of the Code, i.e., to ensure that all creditors of the same class share pro-rata in the available pool of funds.").  Moreover, "[p]rofessionals seeking compensation from the bankruptcy estate do so at the risk that the estate will not have sufficient funds to satisfy their claims. To hold otherwise would be to ignore the plain language of [the Code] and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code."  Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metro. Elec. Supply Co.), 185 B.R. 505, 509-10 (Bankr. E.D. Va. 1995), *quoting* Guinee v. Toombs (In re Kearing), 170 B.R. 1, 7-8 (Bankr. D. D.C. 1994).

37. To the extent Defendants assert that the Professional Fees are not subject to disgorgement because the fee applications and orders thereon were characterized as "final", the Shaia court dismissed such an argument. The court stated that the fee applications and Orders "are 'final' only in the sense that they represent the last interim request of the Chapter 11 professionals." *Id.* at 510. In footnote 7, the Shaia court stated that it would have considered fee applications filed subsequent to the "final" applications had professionals performed additional, compensable work. No doubt Defendants would have asked this Court to consider fee applications filed subsequent to the "final" applications had any of them performed additional, compensable work after approval of the Professional Fees discussed above. Labeling the applications as "final" does not change the fact that these cases are still ongoing. The fee applications were "final" in name only and the Professional Fees paid to Defendants following approval of those applications are subject to disgorgement and re-distribution to holders of all Allowed Administrative Claims, on a pro rata basis.

38. Section 5.1.2 of the Confirmed Plan provides for payment of Allowed Administrative Claims on the Effective Date or the date the claim is allowed. Therefore, under the Confirmed Plan, payment to Plaintiff was due no later than October 27, 2014.

39. In denying Plaintiff's request for payment, the Trustee points to a "pour over" provision in the Liquidation Trust Agreement (as that term is defined in the Confirmed Plan). However, because payment to Plaintiff was due before the Trustee began operating, there was no reason for Plaintiff to object to the terms of the Liquidation Trust Agreement. And while the Liquidation Trust Agreement included terms which contradicted terms of the Confirmed Plan with regard to payment of Allowed Administrative Claims, at that time Plaintiff had no reason to

believe that Debtors would not be remitting payment in accordance with the terms of the Confirmed Plan. The Confirmed Plan is a contract. *See* In re National Gypsum Co., 257 B.R. 184, 203 (Bankr. N.D. Tex. 2000); In re Page, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990). "[I]t is a cardinal rule of construction that ambiguous terms of a contract are to be interpreted against the party which drafted them." C.A. May Marine Supply Co. v. Brunswick Corp., 557 F.2d 1163, 1165 (5th Cir. 1977). *See also* In re Fawcett, 758 F.2d 588, 591 (11th Cir. 1985)("[T]he debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the Plan.")

40. Under the Confirmed Plan, payment of Allowed Administrative Claims was due on the Effective Date. Therefore, a pour over provision in a trust which provides for lesser treatment of Allowed Administrative Claims contradicts the terms of the Confirmed Plan. Reading the contradictory terms against Debtors, as draftsmen, payment of Allowed Administrative Claims should be in accordance with the Confirmed Plan rather than the trust. To the extent necessary to allow for pro-rata distributions to all holders of Allowed Administrative Claims under the terms of the Confirmed Plan, the Court should order disgorgement of the Professional Fees paid to Defendants.

### VI. Consultation with Defendants

41. As stated above, a request was previously made to the Trustee for payment of Plaintiff's Allowed Administrative Claims. In addition, on March 9, 2016, Plaintiff sent a letter to all of the Defendants in an attempt to resolve this matter without the need for litigation. While the undersigned received communications from representatives of several Defendants, no resolution has been reached.

## VII. Prayer for Relief

WHEREFORE, Plaintiff requests the Court enter a final judgment:

1. disgorging the Professional Fees to the extent necessary to enable a pro-rata distribution to all holders of Allowed Administrative Claims;

2. ordering immediate pro-rata distribution of the disgorged Professional Fees;

3. awarding reasonable attorney's fees and costs to Plaintiff; and

4. granting Plaintiff such other relief as to which Plaintiff is entitled.

    Respectfully submitted,

    KEN PAXTON
    Attorney General of Texas

    JEFFREY C. MATEER
    First Assistant Attorney General

    JAMES E. DAVIS
    Deputy Attorney General for Civil Litigation

    RONALD R. DEL VENTO
    Assistant Attorney General
    Chief, Bankruptcy & Collections Division

    */s/ Kimberly A. Walsh*
    KIMBERLY A. WALSH
    State Bar No. 24039230
    Assistant Attorney General
    Bankruptcy & Collections Division MC 008
    P. O. Box 12548
    Austin, TX 78711-2548
    Telephone:   (512) 475-4863
    Facsimile:   (512) 936-1409
    Kimberly.Walsh@texasattorneygeneral.gov

    ATTORNEYS FOR THE TEXAS
    COMPTROLLER OF PUBLIC ACCOUNTS